1  EDWARD G. SCHLOSS LAW CORPORATION
   EDWARD G. SCHLOSS CA BAR NO. 102858
2  3637 Motor Avenue, Suite 220
   Los Angeles, California 90034
3  (310) 733-4488
   B23485/nc

4  IN ASSOCIATION WITH

5  KEVIN S. EIKENBERRY, ESQ. (#103303)
   1470 Maria Lane, Suite 440
6  Walnut Creek, CA 94596
   (925) 933-2161

7

8  Attorneys for Movant and property owner
   TRA PARTNERS, LLC

9

10                  UNITED STATES BANKRUPTCY COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12
    In re                          ) Bk. No. 11-43140-EJ
13                                  )
    LESLIE B. MARKS,                ) R.S. No. EGS-47
14                                  )
                    Debtor.         ) Chapter 13
15                                  )
                                    ) MOTION FOR *ANNULMENT* OF THE
16                                  ) AUTOMATIC STAY; MEMORANDUM
                                    ) OF POINTS AND AUTHORITIES
17                                  )
                                    ) Hearing-
18                                  ) Date : May 6, 2011
                                    ) Time : 10:00 a.m.
19                                  ) Place: United States Bankruptcy Court
                                    )        1300 Clay Street
20                                  )        Courtroom 215
                                    )        Oakland, CA
21  _____) Honorable Edward D. Jellen

22

23      TRA PARTNERS, LLC, its assignees and/or successors in interest, moves the

24  Court for annulment of the Automatic Stay provided by 11 U.S.C. Section 362 as to

25  moving party so that moving party may commence the unlawful detainer action and

26  obtain possession of the subject property located at 3099 Suter St., Oakland, CA 94602.

27  This motion is based on this Motion and Memorandum of Points and Authorities,

28

                                    1

1  Request for Judicial Notice (hereinafter "**RJN**") and the Declarations of Trenor Askew

2  and Kevin S. Eikenberry filed concurrently herewith.

3       In the event the Debtor fails to appear at a hearing on this motion, the Court may

4  grant annulment of the Automatic Stay, validating actions taken by Movant in the

5  unlawful detainer proceeding, and allowing Movant to obtain possession of such property

6  without further hearing.

7       WHEREFORE, Movant prays judgment as follows:

8       (1) For an Order granting **annulment** of the Automatic Stay, permitting Movant

9  to move ahead in the unlawful detainer proceeding, and thereafter to take any necessary

10 action to obtain possession of the Property.

11      (2) For an Order binding Debtor and any other persons and/or entities claiming an

12 interest in the subject property in any conversion of the above-referenced Bankruptcy

13 proceeding and in any other bankruptcy proceedings of any nature whatsoever, pending or

14 impending, prohibiting the effects of any future Automatic Stays against Movant herein.

15      (3) For an Order waiving the 14-day stay provided by Bankruptcy Rule

16 4001(a)(3).

17      (4) For such other relief as this Court deems appropriate.

18

19 DATED: April 21, 2011            EDWARD G. SCHLOSS

20

21                                By _____
                                     EDWARD G. SCHLOSS
                                     Attorneys for Movant

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTORY FACTS

This case involves multiple bad-faith bankruptcy filings and vexatious litigation. The instant bankruptcy case was filed solely to revive litigation after Debtor was denied relief in state and federal courts.

Debtor refinanced the subject property located at **3099 Suter St., Oakland, CA 94602** with a $495,000.00 cash out refinance loan, which was secured by a Deed of Trust recorded March 30, 2006 against the subject property. Said Deed of Trust is attached to the Declaration of Kevin S Eikenberry as **Exhibit "A"**. <u>After making only one (1) payment</u>, Debtor ceased making her monthly payment obligations. On October 20, 2010, after the District Court for the Northern District of California *denied* Debtor's motion for preliminary injunction enjoining the foreclosure sale, Movant purchased the property as a *bone fide* purchaser for value at a duly noticed and regularly held trustee's sale. Movant is a third-party purchaser who had nothing to do with the foreclosed Deed of Trust. The Trustee's Deed Upon Sale was recorded November 1, 2010. The recorded Trustee's Deed Upon Sale is attached as **Exhibit "B"** to the Declaration of Kevin S Eikenberry.

After acquiring title to the subject property, Movant sought to obtain possession through unlawful detainer proceedings. Through counsel Kevin S. Eikenberry, Movant prosecuted Alameda County Superior Court Case # RG10545629 in order to evict Debtor and obtain possession of the property. Debtor demanded and received a jury trial, which began at the start of March 2011. Movant called Debtor as an adverse witness at trial, and Debtor admitted: (1) she executed the above-mentioned Deed of Trust, (2) she made only one payment on the loan evidenced by said Deed of Trust, (3) that she was aware of the foreclosure, (4) and that the property was sold at the foreclosure on October 20, 2010. Debtor failed to make a defense. On March 10, 2011, the jury returned a verdict for Movant. As a result of confusion on the part of jury members in filling out the verdict sheet, the jury indicated that Movant was owed damages, but failed to check the separate space indicating that Movant should be awarded possession of the property. The

3

1   Judgment was entered March 21, 2011, <u>granting Movant immediate possession of the</u>
2   <u>subject property.</u> (*See* **Exhibit "D"** to the Declaration of Kevin S. Eikenberry). However,
3   due the erroneous jury verdict sheet, there is tension between the jury verdict sheet and
4   the Judgment which necessitated Movant filing a motion for judgment notwithstanding
5   the verdict ("JNOV"). Under state law, Movant only had fifteen (15) days from March 21,
6   2011 to file a motion for JNOV. In order to maintain its rights and to correct the obvious
7   error in the jury's verdict sheet, Movant filed a motion for JNOV on March 30, 2011.
8   While filing the motion, the clerk of the trial court informed Movant's counsel of the
9   instant bankruptcy which was the first time Movant learned of the bankruptcy. A hearing
10  on the JNOV motion was originally set for April 29, 2011, but Movant has asked that
11  hearing in the Superior Court be postponed so it can seek annulment of the automatic stay
12  in this latest of several bankruptcy proceedings by this Debtor.  By the instant Motion for
13  Relief, Movant seeks to validate the actions taken in the unlawful detainer proceeding,
14  viz., the filing of the motion for JNOV, which actions were necessary to preserve
15  Movant's rights and the work undertaken by Movant and the trial court in the unlawful
16  detainer proceedings.

17      Movant is a bona fide purchaser for value.  Movant subsequently discovered
18  Debtor's long litigation history surrounding the subject property, which includes multiple
19  state and federal civil cases, adversary proceedings in a third party's bankruptcy,
20  bankruptcies filed by Debtor, and adversary proceedings in Debtor's own bankruptcies.
21  Debtor's litigation history shows that Debtor has <u>not</u> come to the bankruptcy court in
22  good faith, but has simply filed because she has exhausted her options in other litigation
23  forums.

24      While Debtor's litigation history is more fully set out in the Declaration of Kevin
25  S. Eikenberry from page 3, line 18 to page 7, line 18 (including defendants and causes of
26  action), what follows is a brief history of Debtor's litigation.

27      Debtor initially filed suit on June 28, 2006 in Alameda County Superior Court
28  (Case # RG06276972), but this case was removed to district court in the Northern District

4

of California (as case # 06-CV-06806-SI). At Debtor's request, this case was **dismissed with prejudice** on September 10, 2010.

While the above suit was pending, Debtor filed a second suit in the Northern District of California (case # 07-CV-02133-SI). The Court granted defendants' motion for judgment on the pleadings, and **dismissed the action with prejudice** by Order entered April 10, 2009. *See* **RJN Exhibits 1** and **2**.

On March 3, 2009, Debtor filed an adversary proceeding in the Delaware bankruptcy of New Century TRS Holdings, Inc. (Adversary Proceeding # 09-50244-KJC). This action was dismissed September 2, 2010.

Debtor has also filed multiple bankruptcies, including Oakland Bankruptcy Court Case # 09-44490 (filed May 26, 2009; dismissed June 24, 2009 for failure to file Schedules); Case # 09-46608 (filed July 23, 2009; dismissed January 20, 2010, *see* **RJN Exhibit 3**); Adversary Proceeding #09-04026 (filed January 16, 2009); Adversary Proceeding #09-04307 (filed July 23, 2009 in Case # 09-46608; action dismissed with prejudice, *see* **RJN Exhibit 3** at page 1, line 26 through page 2, line 3 and page 3 lines 1-8); and the instant case.

Debtor filed a third action in the Northern District of California (case # 10-CV-03593) on August 16, 2010. Of particular note, on October 1, 2010, the Court denied Debtor's application for a temporary restraining order and preliminary injunction which would have prevented the October 20, 2010 foreclosure sale at which Movant purchased the property. *See* **RJN Exhibit 4**. After nearly a half-dozen distinct cases, through complaint after amended complaint, Debtor was still unable to show that the foreclosure sale should have been avoided. On October 27, 2010, the Court dismissed the case.

Debtor's most recent litigation is Alameda County Superior Court Case # RG10546852, filed on November 17, 2010. On December 15, 2010, at the Order to Show Cause hearing which would have prevented Movant's unlawful detainer proceeding, the Court *denied* Debtor a preliminary injunction, holding that "Plaintiff has not established a

5

likelihood of succeeding on the merits, specifically, the evidence in the record fails to

show that Defendant TRA Partners LLC are not the rightful owners of the property at

issue and do not have a right to prosecute the related UD action case no. RG10-545629 to

its conclusion." *See* **RJN Exhibit 5**. This case remains pending.

Having been denied in both state and federal court, Debtor filed the instant

bankruptcy. Debtor has again filed an adversary proceeding (Adv. No. 11-04105) in this

recent bankruptcy proceeding regarding claims and "facts" which were previously

dismissed at the state and federal levels, and which are pending in the Superior Court

case. Debtor clearly is not in bankruptcy because of financial troubles–her "Summary of

Schedules" (filed under penalty of perjury) asserts that Debtor has $203,400.00 in assets,

only $2,755.00 in liabilities, and a net income of $568.00 per month. Debtor's Schedules

show her true game: Schedule A claims the subject property, without any debt, and the

Statement of Affairs claims the foreclosure sale was based upon fraud and is being

litigated. The only fraud present is the fraud by Debtor in filing this bankruptcy. Debtor's

sole purpose in filing the instant bankruptcy was to frustrate Movant's unlawful detainer

proceeding and re-litigate sale claims. This Court abstained from hearing the adversary

proceeding by Order entered April 14, 2011. (See RJN Exhibits 6, 7 & 8).

Movant now seeks a Court order **annulling** the stay as to Movant's interest in this

real property and validating post trial actions taken in the unlawful detainer proceeding.

## POINTS AND AUTHORITIES

### I. THE COURT HAS POWER TO ANNUL THE AUTOMATIC STAY TO VALIDATE ACTIONS TAKEN BY CREDITORS DURING STAY PERIOD

In Jewett v. Shabahangi, 146 B.R. 250 (9th Cir. BAP 1992), the Bankruptcy

Appellate Panel of the Ninth Circuit confirmed a lower court's decision to validate a

foreclosure sale which was perfected after the filing of a Chapter 13 petition. The Jewett

opinion recognized the general rule as stated in the case of In re Schwartz, 954 F.2d 569

(9th Cir. 1992), that actions taken in violation of the automatic stay are void. However,

6

notwithstanding that general rule, a bankruptcy court has the power to annul the automatic stay to validate actions taken while the stay was in force and which would otherwise be void. Neither the lower court nor the Bankruptcy Appellate Panel required a finding that the case had been filed in bad faith. As indicated on page 253 of the opinion:

> The court also found that the Debtor did not have any equity in the property when the sale took place and that the Debtor did not present any substantial evidence that the property was necessary for a reorganization. Finally, in determining that the equities weighed in favor of the Appellee, the court noted that the Appellee had more invested in the property than did the Debtor and that no explanation was given as to why the Debtor collected rents for an extended period, let the mortgages go further into default and waited until the last minute to file a Chapter 13 petition.

> We find that the bankruptcy court's findings are supported by the record. Therefore, the bankruptcy court's decision to annul the automatic stay so as to validate the transfer of the property to the Appellee was not an abuse of discretion. Moreover, given that the foreclosure sale was properly conducted and that the Appellee acted reasonably in effectuating the sale and transfer, we conclude that, under equitable principles, the bankruptcy court's decision was proper. [Emphasis added]

Therefore, the Court in the Jewett case, rather than requiring a finding of bad faith, applied the standard of whether the equities weighed in favor of the moving party in seeking annulment of the automatic stay. "[T]he proper standard for determining 'cause' to annul the automatic stay retroactively is a 'balancing of the equities' test. [Citation]... The general trend has been to focus on two factors in determining whether cause exists to annul the stay: '(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor.' [Citation]. These two factors are not dispositive. In addition, courts employ many other factors, which further **examine the debtor's and creditor's good faith, the prejudice to the parties, and the judicial or practical efficacy of annulling the stay.**" In re Fjeldsted, 293 B.R. 12, 24-25 (9th Cir. BAP 2003)(citing In re National Environmental Waste Corp., 129 F.3d 1052, 1055 (9th. Cir. 1997))(emphasis added). Further, "In any given case, one factor may so outweigh the others as to be dispositive." Fjeldsted at 25.

Case: 11-43140   Doc# 23   Filed: 04/21/11   Entered: 04/22/11 00:04:48   Page 7 of 13

1    Movant strongly urges this Court to exercise its equitable powers in annulling the

2    automatic stay and validating the actions in the unlawful detainer proceeding taken by

3    Movant in good faith, who only learned of the instant bankruptcy when counsel was filing

4    the motion for judgment notwithstanding the verdict with the court. To do otherwise

5    would cause extreme and unfair hardship and prejudice to Movant in that Movant would

6    lose its rights for a judgment not withstanding the verdict in the unlawful detainer case

7    and would lose valuable time and resources to start the costly eviction process anew.

8        Debtor, on the other hand, failed to make payments on a loan she obtained and

9    lost title to the subject property at a valid trustee's sale on October 20, 2010. Debtor has

10   already litigated the issues relating to her loan and the foreclosure on numerous

11   occasions, and has been denied relief. The District Court would not issue an injunction

12   against the October 20, 2010 foreclosure sale, and the superior court would not issue an

13   injunction against the unlawful detainer action. Because she was not succeeding

14   elsewhere, Debtor wanted to move litigation to this Court. The bad faith exhibited by

15   Debtor's forum-shopping and vexatious litigation clearly prevents the equities from

16   falling in her favor. See In re Myers, 491 F.3d 120, 128 (3d Cir. 2007)("Every court of

17   appeals to consider the issue has held that wether the filing was in bad faith is relevant to

18   whether the bankruptcy court should annul the automatic stay.") *and* at 125-126

19   (bankruptcy courts "may reasonably find that bad faith exists where the purpose of the

20   bankruptcy filing is to defeat state court litigation without a reorganization purpose... [I]t

21   is appropriate for a bankruptcy court to assess the debtor's purpose and, if that purpose is

22   to frustrate another court's jurisdiction, to consider it in the bad faith inquiry."); In re

23   Kissinger, 72 F.3d 107, 109 (9th Cir. 1995)(affirming bankruptcy court's grant of

24   retroactive relief from stay when individual debtor's decision to file chapter 11 petition

25   just before state court action was to go to jury appeared to be in bad faith). Additionally,

26   Debtor has no legitimate claim to the subject property, and would suffer no harm if

27   Movant were granted annulment and relief from the automatic stay: if Debtor is entitled

28   to any redress, such can be had in any of the state court cases, where it should have been

8

1    sought. Under a weight-of-the-equities test Movant is clearly entitled to annulment of the
2    stay.

3    ## II. THE STAY SHOULD BE ANNULLED WHERE DEBTOR HAS ENGAGED IN AN EFFORT TO ABUSE THE BANKRUPTCY SYSTEM

4

5       Section 362(d) of Title 11 empowers the Court to grant relief from automatic stay
6    by "terminating, annulling, modifying, or conditioning it." *See* Algeran, Inc. vs. Advance
7    Ross Corporation, 759 F.2d 1421 (9th Cir. 1985). As set forth in Algeran, the Ninth
8    Circuit Court stated (on page 1425): "We find no reason or authority (and Algeran has
9    produced nothing persuasive on this issue) prohibiting the nunc pro tunc effect of the
10   order of annulment." Additionally, "[t]he Ninth Circuit has held that the bankruptcy
11   court has '*wide latitude* in crafting relief from the automatic stay, including the power to
12   grant *retroactive relief from the stay*.'" Fjeldsted, 293 B.R. at 21 (*citing* In re Schwartz,
13   954 F.2d 569, 572 (9th Cir. 1992))(emphasis added).

14      In the case of In re Kissinger, *supra*, the Ninth Circuit affirmed the bankruptcy
15   court's annulment the stay to validate a post-petition judgment rendered in a state court
16   proceeding against the debtor, where it appeared the bankruptcy was filed to frustrate the
17   state court litigation. Similarly, the Third Circuit in Myers conceded that the bankruptcy
18   court did not abuse its discretion when it annulled the automatic stay where "the only
19   effect of refusing to ratify the state court action would be to reward [the debtor] for her
20   attempted abuse of the bankruptcy system." Myers, *supra*, at 129.

21      Debtor's failed litigation history – especially the denials to Debtor's motions for
22   injunctions against both the foreclosure sale and unlawful detainer trial – amply
23   demonstrate Debtor's forum-shopping reasons for filing bankruptcy and effort to abuse
24   the bankruptcy system. These action should not be rewarded.

25
26   ## III. RELIEF FROM THE AUTOMATIC STAY IS WARRANTED WHEN THE BANKRUPTCY IS FILED FOR AN IMPROPER PURPOSE

27      As is more fully set out above and in the Declaration of Kevin S. Eikenberry filed
28   concurrently herewith, it is clear that Debtor is using the Bankruptcy Court in an attempt

9

1 to forestall Movant's eviction remedies. 11 U.S.C. §362(d)(1) allows relief from stay for

2 "cause".

3      In the case of <u>In re Fast Food Properties, Ltd. No. 1</u>, 5 B.R. 539 (Bankr.C.D.Cal.

4 1998), the Honorable Peter Elliott, Bankruptcy Judge for the Central District of

5 California, held that a case filed solely for the purpose of frustrating the enforcement of

6 power of sale provisions of a deed of trust was subject to dismissal. The court notes:

7      Under the Bankruptcy Act of 1898, the Bankruptcy Court, without express
     statutory authority, dismissed Bankruptcy cases which were filed

8      improperly for an improper purpose. *In re Ettinger*, 76 F.2d 741 (2d Cir.
     1935) states: '<u>Also, it is the duty of the court sua sponte when it believes

9      its jurisdiction may have been imposed upon to inquire into the facts and
     act in accordance therewith.</u>'

10 <u>In re Fast Food Properties, Ltd. No. 1</u>, 5 B.R. at 540 (emphasis added); *see also*

11 <u>Porterfield v. Gerstel</u>, 222 F.2d 137 (5th Cir. 1955).

12      The Automatic Stay provisions of the Code were not intended to be used
     as a weapon or club to reduce secured creditors into submission with the

13      continued passage of time while no payments are made to them, nor are
     they intended to be permanent refuge for financially distressed debtors or

14      properties. <u>The bankruptcy laws were intended only to give legitimate

15      debtors a breathing spell from creditors, and to afford a reasonable time to
     come up with a repayment or reorganization plan.</u>

16 <u>In re Gaslight Village, Inc.</u>, 8 B.R. 866 (Bankr.Conn. 1981)(emphasis added).

17      Bankruptcy Judge Robert Ordin in the case <u>In re Kenney Kar Leasing, Inc.</u>, 5 B.R.

18 304, 308-309 (Bankr.C.D.Cal. 1980) (emphasis added) explains:

19      <u>No one questions the right of a debtor to a fair chance at rehabilitation. On

20      the other hand that right is not so pervasive as to permit the destruction of
     economical rights equally entitled to the sanctioned protection of law.</u> The

21      cited provisions of the Code are an effort to balance these conflicting inter-
     est, to grant to the debtor the right to continued enjoyment and exploitation

22      of property and assets upon rehabilitation depends, not at the expense of
     secured creditors, but on terms which protect secured creditors in the

23      realization of the value of their interest in such property and assets. Aga-
     inst the theme of adequate protection in the use of the secured creditor's

24      collateral, the statutory and legislative history repeat and emphasize the ri-
     ght of secured creditors to realization of the value of the collateral and the

25      right to be protected against decrease in the value of the interest affected.

26      In the case of <u>In re Frances M. Bystrek</u>, 17 B.R. 894 (Bankr.E.D.Pa. 1982), the

27 Honorable William A. King, Bankruptcy Judge for the Eastern District of Pennsylvania,

28 stated:

10

1    . . .the troubling aspect of this case is that debtor's counsel seems to bel-
2    ieve that Bankruptcy Court is a legal playground where the debtor can in-
   dulge in an elaborate game of catch-me-if-you-can with her creditors. Such
   is not the case. Although the law grants a generous measure of relief to
3    debtors, this benefit is not gratuitous. The law also imposes a measure of
   responsibility. As a member of the bar and an officer of the Court, counsel
4    especially should be aware of this fact. <u>The game attempted in this case
   cannot be permitted</u>.

5       Clearly, no reorganization or repayment is or ever was contemplated or possible

6 by this Debtor. Rather, Debtor filed bankruptcy to halt her eviction and re-litigate stale

7 issues. Debtor has been effectively precluded from filing further actions in other venues,

8 and has therefore filed this bogus bankruptcy as a new avenue to pursue old litigation.

9 Debtor has abused the Bankruptcy Court to the detriment of this creditor, preventing

10 Movant's possession of the subject property while she continues to reap all the benefits of

11 the property.

12     <u>IV. THE STAY SHOULD BE ANNULLED WHERE A CREDITOR HAS
13      INNOCENTLY TAKEN ACTIONS PURSUANT TO ITS
         TRUSTEE'S DEED UPON SALE</u>

14      The issue of annulling the automatic stay in the case involving a "silent debtor"

15 was addressed by Judge Lisa Hill Fenning in the case of <u>In re Williams</u>, 124 B.R. 311

16 (Bankr.C.D.Cal. 1991). As stated by Judge Fenning on page 316 of that opinion:

17         Under case law, the courts have carved out limited exceptions to
18     deal with special problems, such as those created by the 'stealthily silent'
    debtor who continues actively to defend lawsuits, sometimes for years
19     after filing a bankruptcy petition, without informing the other parties or the
    court about the bankruptcy case until an adverse judgment is imminent.
20     *See, e.g. In re Calder*, 907 F.2d 953, 956-57 (10th Cir. 1990); *Matthews v.*
    *Rosene*, 739 F.2d 249, 251 (7th Cir. 1984); *In re Smith Corset Shops, Inc.*,
21     696 F.2d 971, 976-77 (1st Cir. 1982). These cases apply traditional
    equitable principles of laches and estoppel to prevent deceptive or
22     incredibly ignorant debtors from unfairly benefitting by an eleventh-hour
    ambush of their unsuspecting opponents.

23         [9] To address such exceptional circumstances, Section 362(d)
24     confers on the bankruptcy court the power to annul the automatic stay.
    Annulment renders the stay a nullity, as if it never existed. *In re Pettibone*
25     *Corp.*, 110 B.R. 837 (Bankr. N.D. Ill. 1990), app. dism'd, 909 F.2d 1486
    (7th Cir. 1990). <u>The availability of annulment protects creditors and third
26     parties who have, innocently and without knowledge of the case, taken
    actions or detrimentally changed their positions in pursuit of their state or
27     federal remedies</u>. Annulment has also proven an effective weapon against
    debtor fraud, because the bankruptcy court can break a cycle of abusive,
28     multiple bankruptcy petitions filed to hinder and delay creditors, by

11

validating a foreclosure sale conducted pursuant to relief from stay orders obtained in a debtor's prior bankruptcy cases. *See e.g., In re Kinney*, 51 B.R. 840 (Bankr. C.D. Cal. 1985).

Movant contends that the conduct of Debtor fits perfectly within that exception as cited by Judge Fenning in the <u>Williams</u> opinion. Debtor filed a bankruptcy, then failed to inform Movant, who only learned of the bankruptcy from the state court clerk, as it filed its motion for judgment notwithstanding the verdict. Movant urges this Court to issue a nunc pro tunc order **annulling** the automatic stay, validating Movant's action in the unlawful detainer proceeding, and allowing Movant to go forward under state law to obtain possession of the subject property.

## V. CAUSE EXISTS TO VACATE THE STAY BECAUSE THERE IS NO DEBTOR-CREDITOR RELATIONSHIP BETWEEN MOVANT AND THE DEBTOR

A "claim" is defined at 11 U.S.C. §101(4) and means "the right to payment." Likewise, the word "creditor" is defined at 11 U.S.C. §101(9) and means "an entity that has a claim against the Debtor...." The evidence before the Court shows that the Debtor in the instant case has no legal obligation or liability to Movant, and that Movant has no claim against the Debtor.

Accordingly, Movant is not a "creditor" and has no "claim" in this proceeding. Therefore, the Debtor cannot use the Bankruptcy Code's provisions to modify Movant's rights. Therefore, cause exists to vacate the automatic stay to allow Movant to proceed with enforcing its rights pursuant to its Trustee's Deed Upon Sale.

## VI. THE BANKRUPTCY COURT RETAINS JURISDICTION AFTER DISMISSAL

A Bankruptcy Court, authorized to annul an automatic stay, may do so after the dismissal of a bankruptcy case. <u>Aheong v. Mellon Mortgage Co.</u> ("<u>In re Aheong</u>"), 267 B.R. 233, 239-40 & n. 8 (9th Cir. BAP 2002).

A Bankruptcy Court retains jurisdiction after dismissal to interpret and effectuate its orders, including the nunc pro tunc lifting of the automatic stay in the bankruptcy case. *See* <u>In re Aheong</u>, 276 B.R. at 239-40 & n. 8 (*quoting* <u>Tsafaroff v. Taylor</u> ("<u>In re Taylor</u>"),

12

884 F.2d 478, 481 (9th Cir. 1989)); In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992); *and* In re Giddens, 289 B.R. 329, 337 (Bankr.N.D.Ill. 2003).

The effect of the dismissal of a case is to restore the debtor and creditors to their pre-petition status. In In re Aheong, 276 B.R. at 239-40, the Court stated:

> [D]ismissal generally ends the automatic stay and revests property of the estate in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B).

> [W]e hold that by granting [a] Motion to Annul the Stay the bankruptcy court was acting to "interpret" and "effectuate" its Dismissal Order, and was not granting new relief "independent" of that order. The "basic purpose" of the Dismissal Order was "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S. Code Cong. & Admin. News 1978, 5963, 61294: S. Rep. No. 989, 95 Cong., 2d Sess. 48-49 (1978), U.S. Code Cong. & Admin News 1978, 5787, 5835.

In considering Movant's motion to annul the stay, the Court is properly interpreting and effectuating the dismissal of Debtor's Chapter 13 petition. This act is within the Bankruptcy Court's ancillary jurisdiction, which survives dismissal. In re Aheong, 276 B.R. at 239-40 & n. 8.

Movant respectfully requests this Court retain jurisdiction to rule on Movant's motion to **annul** the automatic stay, even if the Court dismisses the Debtor's most recent bankruptcy case.

## VII. CONCLUSION

It is not, nor was it ever, the intent and purpose of the Bankruptcy law to make the protective shield of the Bankruptcy Courts available to debtors who have no ability or intent to reorganize. Movant is entitled to **annulment** of the stay, to stem the tide of abuse and to allow this Movant to obtain possession of its property.

Respectfully Submitted,

DATED: April 21, 2011

EDWARD G. SCHLOSS

By: _____
EDWARD G. SCHLOSS
Attorney for Movant

13