LESLIE MARKS
3099 SUTER STREET
OAKLAND, CA 94602

TEL: 510/434-9748
FAX: 866/813-8313

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | ) CASE NO. 11-43140 |
| | ) |
| LESLIE PATRICE BARNES MARKS | ) CHAPTER 13 |
| | ) |
| Debtor. | ) **RELATED CASES:** |
| | ) USBC DELAWARE: 09-50244; 07-10416 |
| | ) 9TH CIR. COURT OF APPEAL: 10-16811; |
| | ) 10-16799 AND 10-17811 |
| | ) ACSC CASE NOS: |
| | ) CASE NO: RG10545629 AND RG10546852 |
| | ) |
| | ) OPPOSITION TO MOTION TO ANNUL |
| | ) AUTOMATIC STAY |
| | ) |
| | ) |

TO THE COURT, PLAINTIFFS TRENOR ASKEW, and TRA PARTNERS, LLC AND ALL INTERESTED PARTIES:

Plaintiff, Leslie Marks, hereinafter "Marks" hereby opposes the Motion to Annul the Automatic Stay brought by Trenor Askew dba TRA PARTNERS, LLC., herein after "Askew" or "TRA". The foreclosing documents are fraudulent on their face, the clearly reference a loan to which Marks has no obligation and is not related to Marks Deed of Trust. The Notice of Default was recorded prior to the fraudulent assignment, in violation of law, and TRA should seek relief from the party that sold it a property with a clouded title not Marks. The 2007 lis pendens

-1-

remains recorded, has not been expunged and litigation continues on that lis pendens.  TRA seeks relief from the wrong party.

1.  TRA's Motion to Annul Stay must be denied in its entirety, with prejudice.  Not simply because it served Marks without following the Federal Rules of Civil Procedure, allowing Marks the required response time; TRA seeks relief based upon documents which it knows or reasonably should know are fraudulent on their face.  TRA is NOT a creditor nor a lender.  As litigation continues in other venues regarding Marks mortgage, including in the Delaware Bankruptcy Court with the New Century Liquidating Trust, Marks will be irreparable harmed and suffer manifest injustice should TRA's improper motion for relief be granted.

2.  Rule 7017 (incorporating the Rule 17 real party in interest rule), Rule 7019 (incorporating Rule 19 by reference) after specifying the Part VII rules that apply automatically to contested matters, Rule 9014(c) states: "The Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." U.S. v. AVX Corp., 962 F.2d 108, 116 n. 7 (1st Cir.1992).  The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a `case or controversy' between himself and the defendant within the meaning of Art. III," Id.

### BACKGROUND OF THE CASE

3.  In 2004 New Century refinanced Marks Home and advised her that she must continue to refinance every six months to improve her credit rating and to consistently lower her monthly payments while equity in her property would grow. Marks did not understand these matters, but followed the advice of the bank she believed she could trust.  Marks did not know about pre-payment penalties and other fees and charges that effectively did not lower monthly mortgage payments but increased them.

4.    In 2006 Home 123 former employee Tom Chicoine solicited Marks to engage in a refinance.  Mr. Chicoine approached Marks home, called, and emailed her.  Marks son was ill at the time and Chicoine called Marks and prayed with her on the phone.  Marks had become a certified Loan Signing Agent, and Chicoine promised Marks that she would be the exclusive notary public for all Home 123 mortgages in the bay area.  Chicoine stated that Marks would make an additional $1000 per month.  Marks also had just changed jobs and had received a $12,000 annual salary increase.  Chicoine failed to advise Marks that he was using this information as income to qualify Marks for a burdensome mortgage.  Chicoine failed to tell Marks that Home 123 and New Century were one in the same company.  The terms of the 2006 mortgage included paying off Marks Mercedes SUV, among other things.  Marks note should have been around $2200.00 per month, per the terms of the agreement.  A series of events occurred which are in the court file in the United States District Court, Northern District of California 06-06806.

5.    Marks received the first invoice from New Century in the amount of $4200.00. Marks made this payment.  New Century employees then advised Marks that her next months payment would be $4,700.00.  New Century employees began calling Marks new employer, and harassing Marks and her employer.  Marks filed suit immediately and was not in default at the time she filed her lawsuit.  Subsequently, New Century filed bankruptcy on April 2, 2007. Marks received monetary judgment against Tom Chicoine.  Marks immediately filed a proof of claim in Delaware.

6.    Ocwen claimed to have received Marks mortgage on April 2, 2007.  There are no recorded assignments from Home 123 to Ocwen, or New Century to Ocwen.  Marks alleged that Ocwen as the lender "walked in the shoes" of New Century and had to address the inconsistencies in her mortgage as alleged against New Century.  From 2007 thru 2009 Ocwen failed to service Marks mortgage in any way.  Judge Susan Illston ruled against Marks because Ocwen claimed to be a 'servicer' not the "lender" and had no duties to Marks as a "lender" would have.  Marks was advised to file an Adversary Proceeding in Delaware against New

-3-

Century and Marks did so. Marks filed and recorded a lis pendens which remains currently recorded as actual and constructive notice that the title to the property is in question.

7.       Marks filed bankruptcy in 2009 in the Tchaikovski court. Ocwen then filed a proof of claim in the amount of $600,000.00. Marks arguments that Ocwen claimed to be a "servicer" and had no standing to bring the proof of claim fell upon deaf ears. Ocwen then transferred its non-existent interest in Marks mortgage to GreenTree. GreenTree filed for and was granted a Motion for Relief from stay based upon fraudulent pleadings it filed. GreenTree filed pleadings on behalf of Home 123, which was in active bankruptcy in and without leave of the Delaware Bankruptcy Court or the Trustee in Delaware. The Tchaikovski court failed to hear Marks claims, and granted GreenTree's motion for relief from stay. These matters are currently under appeal in the 9th Circuit and reflected in this Court's docket No. 11 in the Notice of Related cases.

8.       GreenTree then began sending Marks monthly invoices ranging from $0.0 to $2,000,000.00. GreenTree recorded no assignments in 2009. In May of 2010 GreenTree recorded a Notice of Default. In August of 2010 GreenTree recorded assignments and a substitution of trustee signing for Home 123. Home 123 is currently in bankruptcy in Delaware and there was no permission of the Delaware Bankruptcy Court nor the current trustee to approve such and assignment. Marks filed suit in the United States District court bringing these allegations, which the court refused to hear. The court however, did not deny Marks the right to appeal its decision. The Honorable Susan Illston stated in an order that she did not believe Marks was bringing her claims in bad faith. These issues are currently under appeal.

9.       GreenTree then brought foreclosure proceedings and failed to expunge Marks lis pendens prior to the unlawful trustee's sale. TRA claimed to have purchased the property at the foreclosure sale on October 20, 2010. Trenor Asknew then trespassed on Marks property with another man. They had two empty pickup trucks parked in front of Marks home and apparently were attempting to break in. Marks arrived and witnessed Mr. Asknew attempting to open a window on her front porch. Mr. Askew stated that he purchased Marks home at the trustee's

-4-

Case: 11-43140    Doc# 27    Filed: 04/28/11    Entered: 04/28/11 16:04:09    Page 4 of 25

sale. Marks told him that was too bad, because the property is in active litigation since 2007 and that he did not perform his due diligence prior to the Trustee's sale. Mr. Asknew stated that there was no lis pendens recorded. Marks advised him that there was a lis pendens recorded.

10. On or about October 21, 2010 Askew called Marks and stated that there was a lis pendens recorded. Mr. Askew stated that his title company forgot to tell him about it. Mr. Askew stated that his title company told him that the court "forgot" to expunge the lis pendens. Askew then stated if the banks give him his money back "we are good." Marks advised him that she had no obligation to him or his investors and that in this foreclosure crisis, he failed to perform due diligence prior to purchasing the property. Furthermore, Marks advised him that the party who conducted the foreclosure sale had no standing to do so. Marks referred Askew to the pending cases and evidence. Despite all this Askew, hired a series of attorneys. Askew harassed Marks by conducting unlawful surveillance and continued trespass on her property. Attorney Eikenberry joined in the harassment via telephone and making unprofessional comments about Marks and her family, stating that it was "too bad" she had to endure the harassment and it must be "scary".

11. This all led to the unlawful detainer trial, where the jury awarded TRA fees and not Marks home. Marks filed for protection of the automatic stay and served both Eikenberry and Department 30 of the Alameda County Superior court. Despite this Eikenberry continued to violate the automatic stay and continued setting hearing dates and mailing Marks documents daily.

## STATEMENT OF ISSUES

12. At the unlawful detainer trial Defendants were awarded a monetary sum. The Jury did NOT award the Subject Property to named Defendants. The jury awarded monetary damages only. Defendants and their counsel continue to violate the Automatic Stay by filing motions to unlawfully take possession of Marks homestead/primary residence (herein after the

"Subject Property") and obtain a judgment based upon fraudulent documents and other acts in clear and bold violation of law.

13. There is an important difference between a void deed and one that is voidable. A void deed is a nullity, invalid ab initio, or from the beginning, for any purpose. It does not, and cannot, convey title, even if recorded. *Empire Ranch & Cattle Co. v. Coldren*, 51 Colo. 115, 121, 117 P. 1005, 1007 (1911). The interest of a good faith purchaser under a void deed is not protected. See *Upson v. Goodland State Bank & Trust Co.,* 823 P.2d 704, 706 (Colo. 1992) – referring to a subsequent purchaser if a voided deed is recorded.

14. If a person has been fraudulently deceived about the nature of a document, so that he or she is excusably ignorant about what has been signed, courts recognize "fraud in the factum." Unlike other types of fraud, fraud in the factum yields an instrument that is void, and not merely voidable. Svanidze, 169 P.3d at 266 (citation omitted); see also Upson, 823 P.2d at 706; Dan B. Dobbs, Handbook on the Law of Remedies § 9.6, at 645-46 (2d ed. 1993). Here TRA has a deed that is not only void based upon fraud, it is void on its face as it refers to a loan to which Marks has no obligation and a loan which is not related to the 2006 Deed of Trust.

15. In re Viencek, 273 B.R. 354, 357-59 (Bankr.N.D.N.Y.2002) (requiring that servicing agent amend a proof of claim to identify the owner of the claim). Defendant Ocwen claimed to be the t "servicer" and is NOT the "lender" as such, its Proof of Claim is fraudulent and Marks was entitled to relief under the law. The Tchaikovski Court failed to address this and this matter is currently under appeal. In re Kang Jin Hwang, 396 B.R. 757 (Bankr.C.D.Cal., 2008 the court found that numerous declarants in relief from stay motions are not competent to testify as to the information included in their declarations. See, e.g. In re Vargas, 393 B.R. 701, 2008 WL 4200129 (Bankr.C.D.Cal.2008) (finding that the In re Kang Jin Hwang, 396 B.R. 757 (Bankr.C.D.Cal., 2008) declarant was a low level clerk who was not competent to provide any relevant testimony contained in his declaration). In conclusion the Kang court found upon reconsideration that the servicer must satisfy the procedural requirements of federal law. These requirements include joining the owner of the ORIGINAL note on two separate grounds: it is the

-6-

real party in interest under Rule 17, and it is a required party under Rule 19. Unlike Rule 7017 (incorporating the Rule 17 real party in interest rule), Rule 7019 (incorporating Rule 19 by reference) is not applicable automatically to contested matters (including relief from stay motions) in a bankruptcy case. However, after specifying the Part VII rules that apply automatically to contested matters, Rule 9014(c) states: "The court may at any stage in a particular matter direct that one or more of the other rules in Part 1VII shall apply." In the referenced case, the court has directed that Rule 7019 applies to a motion for relief from stay. There is no precise formula for determining whether a particular non-party must be joined under Rule 19(a). The application of the rule turns on the facts of the individual case in light of the general policies of (a) avoiding multiple litigation, (b) providing the parties with complete and effective relief in a single action, and (c) protecting the absent persons form the possible prejudicial effect of deciding the case without them.

16. The "real party in interest" requirement, on the other hand, is generally regarded as one of many "prudential" considerations that have been "judicially engrafted onto the Article III requirements for standing." See, e.g., In re Village Rathskeller, 147 B.R. 665, at 668 (Bankr. S.D.N.Y.1992). To obtain relief in federal court, a party must meet both the constitutional requirements (standing) and the prudential requirements (including real party in interest). Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed.Cir.2007); see also Village Rathskeller, Inc., 147 B.R. at 668 (citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) for the proposition that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations"). A party may have standing— having suffered an "injury in fact"— but this may not make it the real party in interest. See, e.g., Whelan v. Abell, 953 F.2d 663, 672 (D.C.Cir.1992). Conversely, a party may be the real party in interest, but lack standing. See, e.g., Davis v. Yageo Corp., 481 F.3d 661 (9th Cir.2007). Accordingly, In re Conde- Dedonato, 391 B.R. 247, 250-51. This case is similar to In re Hayes, 393 B.R. 259 (Bankr.D.Mass.2008), where the movant seeking relief from stay failed to show that it ever had any interest in the note at issue. In that case, the court found that the movant lacked standing

altogether to bring the motion because it failed to show that the ORIGINAL BLUE INK note was ever transferred to it, and thus it had no rights of its own to assert. See id. at 266-68; accord, In re Maisel, 378 B.R. 19, 20-22 (Bankr.D.Mass.2007) (denying standing where movant did not acquire note until after filing motion for relief from stay). In the matter at bar, there is NO clarification that the note was ACTUALLY transferred to GreenTree, when it was transferred, if it was the original note, or if Defendant Ocwen has any legal standing to collect on the note in good faith. As Defendant Ocwen continues to have an (all be it invalid, illegal and questionable) proof of claim on file in this court.

17. In In re Kang Jin Hwang, 396 B.R. 757 (Bankr.C.D.Cal., 2008) because IndyMac has failed and refused to join the owner of the secured note, the motion for relief from stay was denied. A governing principle was articulated more than sixty years ago by Judge Learned Hand, perhaps the most distinguished U.S. jurist who never sat on the U.S. Supreme Court. Judge Hand stated: "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert." United States v. Marzano, 149 F.2d 923, 925 (2d Cir.1945). Plaintiff here seeks nothing more than justice. Justice for which she has been fighting since 2006.

## THE BANKRUPTCY TRUSTEE HAS THE POWER TO OVER TURN TRANSFERS THAT VIOLATE THE AUTOMATIC STAY.

18. The Bankruptcy Code defines "property" very broadly as all legal and equitable interests of the debtor and any property that is community property of the debtor 11 U.S.C. 541. Fraudulent transfers are subject to avoidance. While the Chapter 13 debtor has most of the rights and powers of the trustee under Chapter 7, courts have split as to whether the debtor also has the trustee's avoiding powers. However, many courts have interpreted the legislative history so that, although the debtor does not have the exclusive right to the avoidance powers as she does under §§1303 and 1304, she does share the avoidance power with the trustee, and since the debtor would have a greater incentive to use the avoiding power, most courts have allowed it.

-8-

19.     As such and for the reasons stated herein, the initial fraudulent transfer of Plaintiff's Primary Residence to Defendant Ocwen from New Century and Defendant's Ocwen's subsequent transfer to Home 123/GreenTree should be avoided. Debtor and the Chapter 13 Trustee have the power to enforce the avoidance. Plaintiff wishes to do so here.

20.

21.

22.        .

## ANNULLMENT OF THE AUTOMATIC STAY IS INAPPROPRIATE

23.     Marks has not abused the bankruptcy process or bankruptcy law. Annulment of the automatic stay is appropriate when a debtor has clearly abused the bankruptcy process. Marks has not violated any rights to which she is entitled, nor any state or federal laws.

24.     Immediately prior to the Unlawful Detainer Trial, Marks had to attend a Court Ordered Evidentiary Hearing in Delaware. Mr. Eikenberry attempted to manipulate those proceedings. When those attempts failed, Mr. Eikenberry refused to continue the Unlawful Detainer trial. Immediately upon Marks return from Delaware, Marks had to attend the Unlawful Detainer trial, which turned out not to be a trial at all, it was a status setting procedure to determine which court would hear the unlawful detainer trial. In the Chambers of Judge Rolofson, Mr. Eikenberry stated that it was his birthday that day and he preferred to continue the trial. Had either Mr. Eikenberry or TRA had a lawful leg upon which to stand, or any intent to act in good faith, these unprofessional behaviors would not be necessary from sworn officers of the court, and respected members of the California State Bar.

25.     In their Motion to Annul the Automatic Stay, TRA does not offer any evidence that it is a bonafide purchaser for value. The Unlawful Detainer Jury did NOT award the Subject Property, only a monetary sum, and these matters are under appeal as TRA is well aware. Furthermore, TRA should seek relief from the party which it purchased the property with clouded title. The 2007 lis pendens recorded by Marks remains recorded as actual and constructive notice of pending legal action and clouds title. This lis pendens should have been

expunged prior to the unlawful Trustee's sale. Askew, a real estate professional and licensed real estate broker, was aware that the lis pendens was recorded and chose to harass Marks, instead of seeking recovery from the party that conducted the unlawful trustee's sale.

26.     Askew is a registered broker at the California Department of Real Estate, a real estate professional. Askew allegedly "purchased" over 68 properties since on or about 2007 and should have performed due diligence prior to purchasing a property in foreclosure – especially in light of all the allegations of mortgage and foreclosure fraud. During the unlawful detainer trial, Marks brought to the attention of the Unlawful Detainer court that the loan upon which the foreclosure was based is NOT a loan to which Marks has had any obligation, Marks presented evidence in support that is clear on its face. The Unlawful Detainer court Judge Le stated that she did not think the loan number "was relevant." A copy of the index from the Alameda County Recorder's office reflecting that TRA has represented itself as a "trustee" and has signed itself as "beneficiary" on several properties, that Marks believes has been acquired in violation of law.

27.     Furthermore, the law is CLEAR that Marks should have been afforded the opportunity to bring her allegations of fraud BEFORE to the commencement of the unlawful detainer trial. The unlawful detainer court allowed Mr. Eikenberry to testify as to the merits of Marks fraud case, claiming she did not name the proper defendants and would most likely not prevail. The Unlawful Detainer Judge allowed Mr. Eikenberry's opinion's to be the basis for her decision not to relate the fraud case to the unlawful detainer trial. The Unlawful Detainer Court, hereinafter the "Le court") also refused Marks certain rights at trial for failure to "tender". Marks presented case law that states that when allegations of fraud are brought, tender is waived. The Unlawful Detainer court ignored this law as well.

28.     When Marks cross-examined Mr. Askew, Mr. Eikenberry answered questions put to Askew, who was the witness on the stand without objection of the court. Judge Le and Mr. Eikenberry tag teamed Marks and even after Marks suffered manifest abuse during the unlawful detainer court, the jury did not award the Subject Property to TRA. Mr. Eikenberry requested

-10-

the court grant electronic notice of the proposed order, which was to be emailed to Marks prior to the compliance hearing which was set for March 31, 2011. Marks never received the email of the proposed order from either Eikenberry or the Court. Neither the Le Court nor Mr. Eikenberry notified Marks that the compliance hearing was cancelled and the Le Court issued its order without notice to Marks of any kind. Also the proposed order did not have the name of Judge Le, the only presiding judge of the unlawful detainer trial. Immediately upon discovery of the final order, Marks filed for protection of the Automatic Stay and Marks filed a Notice of Appeal of the Unlawful Detainer case.

29.     Furthermore, Marks brought to the attention of the Le Court at the unlawful detainer trial that the loan upon which the foreclosure was based is NOT a loan to which Marks has any obligation. The Le Court determined that "I don't think that matters." In violation of law, as Marks properly alleged, the Notice of Default was recorded PRIOR to the Substitution of Counsel and Assignment. Marks also advised the Court that in the Tchaikovsky Bankruptcy Court Ocwen claimed to transfer Marks note to GreenTree. The recorded assignment fraudulently signed by a representative of GreenTree, does not reflect any recorded assignment from Ocwen. There is no recorded assignment to ANY ENTITY from Home 123, per order of the Delaware Bankruptcy Court or the Delaware Bankruptcy Trustee. As such, the Assignment is fraudulent on its face. In order to be VALID any assignment would have had to be recorded in 2007. The Trust has confirmed that Marks note, which is related to the 2006 Deed HAS BEEN SATISFIED in 2007. The Trust also had testified at the 2011 Delaware Evidentiary Hearing that it has NO RECORDS of transfer to any entity and that Marks should take the "word" of an "officer of the court" that the transfer was done. There is no laws supporting that the "word" of an officer of the Court is sufficient to validate the transfer of real estate OR to record same in the Alameda County Recorder's office.

30.     At the unlawful detainer trial Askew testified that he had a "business relationship" with Fidelity. Marks attempted to establish that that relationship was the basis for the questionable evidence of a handwritten document supporting the purchase of real estate. Mr.

-11-

Askew did not present the front and bank of a cancelled check, nor did he present a Bill of Sale that should have been recorded as evidence of sale of a bonifide sale for value. Lacking such evidence, TRA cannot be a bonifide purchaser for value.

31. Marks alleges here and continues to allege Askew should seek relief from Fidelity, not her. The reason why relief is not being sought from Fidelity is because no payment for value was tendered. Fidelity and TRA have been in cahoots for years, defrauding the good people of Oakland from their homes unlawfully. The handwritten receipt does not show evidence specific to the Subject Property, and the same handwritten receipt could have been used as support of purchasing several properties. A handwritten generic receipt cannot possibly be used as evidence as purchase for value. Marks believes this is the reason why Askew is aggressively pursuing Marks, which is nothing more than abuse of the judicial process and fraud upon the court. Askew nor TRA has presented any evidence to the contrary. Askew nor TRA has presented this Court with any evidence to support they are bonifide purchasers to this court. Attached hereto as Exhibit C is a true and correct copy of the handwritten receipt presented by TRA as evidence of the purchase of Marks property.

32. Furthermore, Askew and Attorney Eikenberry were telephonically present at the Delaware Evidentiary hearing. There was no need for them to be present, as Marks request for TRO was denied. Mr. Eikenberry's attendance was simply to trump up charges. He made a statement – irrelevant to the hearing – at the end of the hearing to justify attorney hourly charges. Mr. Eikenberry has a habit of adding charges to his tab for no reason. At the unlawful detainer trial, Judge Le ordered Marks to appear at a deposition in Eikenberry's office. Marks REFUSED. When asked why Marks refused, Marks stated that in Eikenberrys office, given his pattern of bad faith acts against Marks, she would have NO protection under the law from his bad faith practices. Marks would prefer her testimony be giving on the record and under oath. Despite Marks CLEAR and final decision, the Le Court advised Marks that she had to call Mr. Eikenberry the next day to confirm she would not be appearing because Marks MAY change her mind. In compliance with Judge Le's order, Marks called Eikenberry's office and advised him

-12-

OPPOSITION TO MOTION TO ASSUME

she would NOT be appearing. The next day at court Mr. Eikenberry presented charges for a court reporter for the entire day, stating Marks MAY change her mind. Mr. Eikenberry's continued practice of bad faith charges and verbal harassment over the telephone has caused Marks to suffer manifest injustice in these matters.

33. Marks never defaulted on her 2006 mortgage. In 2006 Marks made the payment of $4,200.00. Marks immediately contacted Home 123 because the payments nor the terms of her loan were as agreed. In 2006, Home123 advised Marks that her ***next month's*** payment would be $4,700.00. Marks immediately filed suit against New Century and its former employee, Tom Chicoine. Marks received a monetary judgment against Tom Chicoine. At the time Marks filed suit, she had was NOT in default of her loan. Marks testified to same that the unlawful detainer trial. Eikenberry's continued harping about the number of payments Marks made is irrelevant here. Eikenberry and Askew heard the testimony of Counsel for New Century explain Marks mortgage was SATISFIED in 2007. As such, Marks mortgage could NOT be in default in 2010.

34. Furthermore, the status of Marks note is NOT relevant to Eikenberry and his clients. They state in their motion for relief from stay that they are NOT creditors. As such, they need to provide evidence that the lis pendens was expunged prior to sale. Failing to do that, and the other allegations as properly alleged by Marks, TRA, Eikenberry and Asknew come to bar with unclean hands and continue to abuse the judicial process and commit fraud upon the court. The relief they seek should come from the party that allegedly sold them a property with a clouded title, not Marks.

35. After the fraudulent and unlawful foreclosure sale, two law suits were filed in State Court: Marks filed to invalidate the foreclosure sale – alleging among other things that the foreclosing trustee had no standing to do so and that the documents upon which the foreclosure was based were also fraudulent; and TRA brought an unlawful detainer action. Attorney Eikenberry filed a Motion for Summary Judgment against Marks which was DENIED, for defects in his pleadings. Judge Carvill, the presiding judge for the motion for summary

-13-

judgment stated that he as a landlord and owned several properties in Marks neighborhood. The Carvill court claimed not to have read Marks responsive pleadings. At the time of foreclosure the foreclosing entity was NOT the original beneficiary of record and the unlawful foreclosure was based upon recorded fraudulent and clearly forged assignments about 60 days after the Notice of Default. These acts are clear violations of law.

36. As Marks stated to both Mr. Eikenberry and Askew AT THE ONSET, Marks wished to invalidate the unlawful and fraudulent trustee's sale and reinstate the Home 123 loan which has been in dispute and active litigation since 2006. The recorded lis pendens remains as active and constructive notice that the title to the Subject Property is clouded.

37. Marks opposes the requested relief because TRA does not have standing to seek relief from stay because the foreclosure sale was defective and based upon a loan to which Marks has no obligation and which is not related to Marks Deed of Trust. Marks further obtained evidence in the form of testimony at the February, 2011 hearing that the 2006 mortgage had been satisfied in 2007 and any assignments had to be recorded prior to October 2007 when Home 123 lost its license to do mortgage business in the State of California. The Trustee's sale is defective because the Notice of Default was recorded before the Assignments, among other violations of law.

38. Marks fraudulent foreclosure sale challenge must be addressed to resolve the merits of TRA's relief motion. Marks has presented prima facie case and clear evidence that the foreclosure sale is void. Marks presents evidence that cannot be disputed. Marks has a significant property interest entitled to protection by the automatic stay.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF OPPOSITION

39. TRA is seeking relief from stay is not a creditor of Marks, has not filed a proof of claim, was not awarded the Subject Property at the unlawful detainer trial and has no standing for this Court to grant the relief requested.

**STANDING**

-14-

40.     Due to the limited scope and expedited nature of a relief from stay proceeding, the standing requirement is not difficult to meet.  Section 362(d) of the Bankruptcy Code provides that stay relief may be granted to a "party in interest," and any party affected by the stay should be entitled to seek relief. 3 Collier on Bankruptcy~ 362.07[2] (3d ed. rev. 2010). In the Ninth Circuit, challenges to secured claims are typically resolved in plenary proceedings. *Johnson* v. *Righetti (In re Joh~son), 756* F.2d 738, 740 (9th Cir. 1985) ("The validity of the claim or contract underlying the claim is not litigated during the hearing."), *overruled on other grounds by Travelers Cas. & Sur. Co.* v. *Pac. Gas & Elec. Co.,* 549 U.S. 443 (2007); *Biggs* v. *Stovin (In re Luz Int'l),* 219 B.R. 837,841-42 (B.A.P. 9th Cir. 1998). Even so, the moving party must establish a prima facie case of its claim or rights against a debtor or its estate to seek relief from stay. *In re Bialac,* 694 F.2d 625, 627 (9th Cir. 1982); *In re Aniel,* 427 B.R. 811, 816 (Bankr. N.D. Cal. 2010).  A prima facie case of standing requires the moving party demonstrate an ***undisputed*** interest in the bankruptcy case that is hindered by the automatic stay. Standing is lacking where a secured creditor cannot present the rudimentary elements of its claim. *In re Gavin,* 319 B.R. 27, 32 (B.A.P. 1st Cir. 2004) (holding the moving party could not trace the chain of title through valid endorsements); *In re Wilhelm,* 407 B.R. 392, 398 (Bankr. D. Idaho 2009) ("each Movant must show that it has an interest in the relevant note, and that it has been injured by debtor's conduct"). If the moving party has a right to assert a claim, even though the claim is disputed, standing to seek stay relief may be found. *Brown  Transp. Truckload* v. *Humboldt Express,* 118 B.R. 889, 893 (Bankr. N.D. Ga. 1990) (finding the non- creditor had standing for stay relief to pursue action against debtor in another forum); *In re Vieland, 41* B.R. 134, 139 (Bankr. N.D. Ohio 1984) (purchaser at a judicial foreclosure sale acquired some interest in debtor's property and was a party in interest).

41.     Title remains clouded in this matter at bar.  Marks 2007 lis pendens remains  recorded and not expunged.  Marks contends the foreclosing trustee should have expunged the lis pendens prior to the unlawful  foreclosure sale. Marks contends the TRA  should seek relief  from the entity from which it purchased a property with a clouded title, not Marks.   As title remains clouded, TRA lacks standing to seek relief from stay.   Even if TRA could establish a prima facie case of standing, however, the Court may still determine if the foreclosure sale was valid to rule on the merits of the Motion.

<u>Marks 's Property Interest in the Residence</u>

-15-

42. Whether Marks may retain valuable equitable title in the Property despite the foreclosure sale is critical to the Motion. To decide the Motion, the Court must evaluate whether Marks has equity in the Property necessary for an effective reorganization and whether cause exists to grant relief to TRA. In re Hoopai, No. 04-02511, 2005 U.S. Dist. LEXIS 42760, at 11-15 (D. Haw. 2005) (relief from stay denied to foreclosing **creditor** because the property might have value to the estate). If the foreclosure sale was invalid, Marks has an interest in the Property which militates in favor of continuing the stay. If the foreclosing entity was not authorized to foreclose the DOT under Civil Code section 2932.5, the foreclosure sale may be void, and Marks would not need to tender to set aside the sale. Bank of America, N.A. v. La Jolla Group II, 129 CaL App. 4th 706, 710, 717 (5th Dist. 2005) (void foreclosure sale required rescission of trustee's deed returning title to the status quo prior to the foreclosure sale); Dimock v. Emerald Properties, 81 Cal. App. 4th 868, 874 (4th Dist. 2000) (sale under deed of trust by former trustee void, and tender of the amount due is unnecessary).

Civil Code section 2932.5 provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money.

GreenTree, LLC, as the foreclosing beneficiary and self-assignee of Home 123's ss interest in the Loan, had to meet both requirements of Civil Code section 2932.57 for the foreclosure to be valid. Under that statute, First, GreenTree had to be entitled to payment of the secured debt. Civ. Code § 2932.5; see also Civ. Code § 2936 (Deering 2010); Comm. Code § 9203(a), (g) (Deeririg 2011); Carpenter v. Longan, 83 U.S. 271, 274 (1872) (the assignment of the note carries the mortgage with it); *Polhemus v. Trainer*, 30 Cal. 686, 688 (1866) (the mortgage always abides with the debt). GreenTree claimed to be the holder of the Note, which GreenTree obtained from Ocwen (but there is no recorded assignments from Ocwen to GreenTree, nor from Home 123 to Ocwen); and 2. Substitution of Trustee and Assignment was endorsed by the same representative of GreenTree and recorded AFTER the Notice of Default. As such, GreenTree's status as holder of the Note fails to meets the first requirement of Civil Code section 2932.5.

-16-

Second, Civil Code section 2932.5 also requires that GreenTree's status as foreclosing beneficiary appear before the sale in the public record title for the Property. This second requirement was not met. Marks 2007 lis pendens remains recorded.

43.     At the unlawful detainer trial, TRA claimed the power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded. Civ. Code § 2932.5 (Deering 2011) (emphasis added). However, *State Compensation Ins. Fund v. Zamora (In re Silverman),* 616 F.3d 1001,1005 (9th Cir. 2010). While the Ninth Circuit reserved the issue of whether bankruptcy courts are bound by district court decisions within the district where the bankruptcy court sits, it recognized that such a requirement "could create the same problem of subjecting bankruptcy courts to a non-uniform body of law." Id.

44.     Code section 2932.5 mentions only assignees of mortgage interests, whereas in those cases, and here, the instrument foreclosed upon was a deed of trust. Historically, a technical distinction existed between deeds of trust and mortgages. For deeds of trust, title vested in the trustee. For mortgages, title remained with the mortgagors. This distinction, however, has been determined to be obsolete. *Bank of Italy Nat. Trust & Sav. Assn. v. Bentley,* 217 I Cal. 644, 656 (1933) (legal title under a deed of trust, though held by the trustee to the extent necessary for execution of the trust, does not carry any "incidents of ownership of the property"); *Yulaeva v. Greenpoint Mortg. Funding, Inc.,* No. S-09-1504, 2009 U.S. Dist. LEXIS 79094, at *4 (E.D. Cal. Sept. 3,2009) (citing 4 B.E. Witkin, Summary of California Law, ch. VIII, § 5 (10th ed. 2005»; N Brand Partners v. Colony GFP Partners, L.P. (In re 240 N Brand Partners), 200 B.R. 653, 658 (B.A.P. 9th Cir. 1996) ("The terminology creates a difference without distinction."); see also 1 Roger Bernhardt, California Mortgages, Deeds of Trust, and Foreclosure Litigation, § 1.35 (4th ed. 2009); 4 Harry D. Miller & Marvin B. Starr, Miller and Starr California Real Estate, § 10:1 n. 9 (3d 2010) (citing Domaradv. Fisher & Burke, Inc., 270 Cal. App. 2d 543,553 (1st Dist. 1969 (mortgages and deeds of trust have the same effect and economic function and are "subject to the same procedures and limitations on judicial and nonjudicial foreclosure")."

45.     The outdated distinction between mortgages and deeds of trust is especially moribund in the context of borrower's rights in the nonjudicial foreclosure context, such as the borrower rights protected by Civil Code section 2932.5. Bank of Italy, 217 CaL at 658 (" [I]mportant rights and duties of the, parties should not be made to depend on the more or less accidental form of the security."); Dimock, 81 Cal. App. 4th at 877 ("[The title distinction] has been ignored in order to afford borrowers with the protection provided to mortgagors."). Civil Code section 2932.5 protects borrowers from confusion as to the ownership of their loans. Stockwell, 7 Cal. App. at 416-17; Bank of America, 129 Cal. App. 4th 9.

46.     The two other historical distinctions between mortgages and deeds of trust identified in Bank of Italy, 217 Cal. at 656, are also defunct. Both mortgages and deeds of trusts are now subject to time limitations on enforcement under sections 880.020-887.09 of the Marketable Record Title Act. Civ. Code §§ 880.020-887.09 (Deering 2011). Bernhardt, supra, § 1.35. In addition, Code of Civil Procedure section 729.010 now provides for a right of redemption following a judicial sale under either a mortgage or a deed of trust. Civ. Proc. § 729.010 (Deering 2011) at 712 (citing 4 Harry D. Miller & Marvin B. Starr, Miller and Starr California Real Estate, § 10:123 (3d ed. 2003 ("Statutory provisions regarding the exercise of the power of sale provide substantive rights to the trustor and limit the power of sale for the protection of the trustor."); see also Civ. Code§§ 2935-2937 (Deering 2010) (providing requirements for the transfer of interests of indebtedness on residential real property that put borrower on notice). Civil Code section 2932.5 must therefore be applied to deeds of trust to ensure trustors are provided the same protection as mortgagors under California law.

47.     The borrower concern addressed by Civil Code section 2932.5 -that it be able to identify the assignee of its loan -is more exigent, not less, than it was during the Great Depression, when Bank of Italy was decided. Problems with the residential mortgage foreclosure process have been widely chronicled. See Katherine Porter, Misbehavior and Mistake in Bankruptcy Mortgage Claims, 87 Tex. L. Rev. 121, 148-49 (2008), cited in Ameriquest Mortg. Co. v. Nosek (In re Nosek), 609 F.3d 6,9 (1st Cir. 2010) (noting mortgage holders and servicer's

-18-

"(c)onfusion and lack of knowledge, or perhaps sloppiness, as to their roles is not unique in the residential mortgage industry"); Andrew J. Kazakes, Developments in the Law: the Home Mortgage Crisis, 43 Loy. L.A. L. Rev. 1383, 1430 (2010) (citing David Streitfeld, Bank of America to Freeze Foreclosure Cases, N.Y. Times, Oct. 2, 2010, at B1) I (explaining that after publication of Katherine Porter's study several Banks froze foreclosures); Eric Dash, A Paperwork Fiasco, N.Y. Times, Oct. 23, 2010, at WK5 (reporting the repeal of the initial freeze and the problems banks faced in clearing up foreclosure paperwork); Office of the Special Inspector General for the Troubled Asset Relief Program, Quarterly Report to Congress 12 (Jan. 26, 2011), available at http://www.sigtarp.gov/ (follow link for "Quarterly Report to Congress").

48.     Specifically in the context of loan assignments, there are "serious distributional consequences to all parties in a bankruptcy if a mortgagee cannot prove it holds a valid security interest." See Porter, I supra, at 148-49. Because controlling Supreme Court authority requires this Court to enforce statutory borrower protections regardless of whether nonjudicial foreclosure is sought under a mortgage or a deed of trust, the Court must conclude Civil Code section 2932.5 applies to the DOT here.

49.     Under *Cathay Bank v. Lee*, 14 Cal. App. 4th 1533, 1539 (4th Dist. 1993), a waiver of borrower protections must be specific and explain the substance ofthe statutory rights at issue. In Cathay Bank, id., the court refused to enforce language of a deed of trust authorizing the lender to exercise the power of sale, because it served to waive the guarantor's defense to the deficiency claim. 13 See also Miller v. United States, 363 F. 3d 999, 1006 (9th Cir. 2004); Hoffman v. Blum, No. C06-2416 MHP, 2008 U.S. Dist. LEXIS 7643, at *8 (N.D. Cal. 2008) ("any waiver of an important statutory right must be knowing and intelligent"); DeBerard Properties v. Lim., 20 Cal. 4th 659,670 (1999) (borrower protection foreclosure provision in Code of Civil Procedure section 580(b) cannot be waived even though it is not included in the list of non-waivable foreclosure provisions detailed in Civil Code section 2953).

50.     The full scope of California's nonjudicial foreclosure law, found at Civil Code sections 2020-2955, exhaustively covers every aspect of the real estate foreclosure process and

-19-

must be respected. *Associates v. Safeco . Title Ins. Co.*, 39 Cal. 3d 281,285 (1985) (refusing to supplement the notice requirements found in Civil Code section 2924); *Dimock,* 81 Cal. App. 4th at 874 (holding a sale under a deed of trust by former trustee void as failing to comply with Civil Code section 2934); *Moeller v. Lien*, 25 Cal. App. *Cathay Bank's holding*, 14 Cal. App. 4th at 1539, was later limited by legislation to commercial transactions. Civ. Code § 2856(e). However, it is still relevant for consumer transactions involving borrowers' residences such as the one before the Court.

Cause Does Not Exist to Annul Stay

51.    Whether the stay should be lifted to permit the unlawful detainer litigation to proceed in state court under 11 U.Sc. §§ 362(d)(l) and (2) requires consideration of the following factors: effective administration of the estate, avoiding prejudice to the parties, and promoting judicial economy. *Benedor Corp. v. Conejo Enters. (In re Conejo Enters.*), 96 F.3d 346, 352 (9th Cir. 1996) (affirming the bankruptcy court's refusal to lift the stay to allow state court litigation to proceed because maintenance of the stay promoted judicial economy by minimizing duplicative litigation and advanced the efficient administration of the estate);  In re Kronemyer, 405 B.R. 915,921 (B.A.P. 9th Cir. 2009).

52.    Whether the bankruptcy court should abstain from deciding state law issues pending in an imminent state court trial was previously determinative in the stay relief context. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). After the statutory changes in 28 V.S.C. § 1334(c)(2) and 28 V.S.C. § 1334(d), the Ninth Circuit in Conejo, 96 F.3d at 352 clarified that so long as the record supports discretion exercised by the bankruptcy court in denying relief from stay, this factor is no longer determinative.

Effective Administration of the Estate

53.    Maximizing the opportunities for reorganization of the estate is the most important factor in determining whether to grant relief from stay to permit litigation in another forum to proceed. *Conejo,* 96 F.3d at 353. Marks, in hers chapter 13 case, seeks to regain title to the Property by invalidating the foreclosure sale and curing the default on the Loan to Home 123.

Marks reorganization could be thwarted if the Court allows the foreclosure issues to proceed before it determines whether there is equity in the Property, or whether Marks can resolve Home 123's interest in her reorganization.

Prejudice to the Parties

54.     Denying relief from stay at this time is the least prejudicial option for both parties. Even if the stay prohibits TRA from gaining possession of the Subject Property in the near term, that inconvenience is appropriate because the foreclosure process was flawed. 11 U.S.C. §§ 361, 363(e) (2011); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd, 484 U.S. 365, 370 (1988) (adequate protection payments can protect valid interests of creditors).     In contrast, Marks could be substantially prejudiced by loss of her property interest if the unlawful detainer action proceeded even though the foreclosure sale may be void. Marks has established a prima facie case of ownership of the Property, subject to whatever defenses TRA might bring in the state court proceeding. These rights should be protected by the automatic stay.  Accordingly, as Marks properly addresses TRA should seek relief from the foreclosing entity from which it purchased a property with a clouded title.  To the extent, this fact is clear, as per the evidence submitted by Marks, TRA will not be prejudiced if relief from stay is denied.  As TRA is NOT a creditor, it is not entitled to adequate protection payments.

Considerations of Judicial Economy.

55.     Challenges to Fidelity's foreclosure sale are simultaneously pending in state and bankruptcy court, creating the potential for confusion and a waste of judicial resources. Even if not specifically raised in the unlawful detainer proceeding, the validity of the foreclosure sale could be decided by default. Cheney v. Trauzette, 9 Cal. 2d 158 (1937); Seidell v. Anglo-California Trust Co., 55 Cal. App. 2d 913,920 (3d Dist. 1942) (challenges to foreclosure sales are barred if not raised in unlawful detainer action). Maintaining the automatic stay until the Court can hear TRA defenses, and can assess Marks reorganization prospects, preserves judicial resources.

**VIOLATIONS OF THE AUTOMATIC STAY**

56.     Marks served copies of her Voluntary Petition on Defendants and on Department 30 of the Alameda County Superior Court upon filing her Bankruptcy Petititon.  A copy of those Proofs of Service are filed in this Court's docket No. 11, Request for Judicial Notice with proofs of service attached to those documents.

57.     Willful violations are those done deliberately and intentionally with knowledge of the automatic stay. A creditor gains knowledge of the automatic stay by oral or written notice of the stay or, since the stay begins automatically upon the filing of a petition for bankruptcy, upon notice of those proceedings. In the event that a creditor inadvertently violates the stay, the creditor must return the property immediately upon notice of the stay. Failure to do so will likely be held a violation of the stay.  Pettitt v. Baker, Id., concluded that 11 U.S.C. § 362(h) created both a "private cause of action" and a "private remedy" that belonged to a debtor. The 5th Circuit overruled the lower courts by specifically ruling that debtors do, in fact, have a private cause of action and remedy under § 362(h). The 5th Circuit stated in pertinent part:

> "We are cognizant that there are scant primary or secondary authorities applying or discussing the relatively new subsection (h). Nor is there a plethora of enlightening references in the relevant legislative history. We do not consider such essential, however, to today's task. To hold that 11 U.S.C. § 362(h) does not create a private right of action would require us to ignore its plain and express language. As we read that language, we cannot but conclude that Congress established a remedy for an individual injured by a willful violation of a section 362(a) stay". Id. at 457-459. (Emphasis added).

Also see, *Matter of Pointer*, 952 F.2d 82, 86 (5th Cir. 1992) (we held that § 362(h) creates a private right of action for one (there, the debtor)); In re Joubert, 411 F.3d 452, 456 (3rd Cir. 2005) (Congress's choice in § 362(h) to create private causes of action for violations of bankruptcy stays); *Smith v. Keycorp Mortg., Inc.*, 151 B.R. 870, 875 (N.D.Ill. 1993) (The Bankruptcy Code is a comprehensive system....When Congress wanted to provide a private cause of action under the Bankruptcy Code, it did so expressly); *In Re Hutchinson*, 211 B.R. 325, 329 (E.D.Ark. 1997) (It is well settled, despite the unsupported assertions of the defendants, that a debtor has the right to plead causes of action for violations of the automatic stay, and recover the appropriate damages); *In re Gullett*, 230 B.R. 321, 331 (S.D.Tex. 1999) (Section 362(h)

creates a private right of action for a debtor); *In re Reyes*, 238 B.R. 507, 518 (R.I. 1999) (Congress explicitly created private causes of action to enforce certain provisions of the Code, such as Section 362(h)), for a few similar cases and conclusions relied upon).

58.     Furthermore, it was brought to the attention of the Judge in the Unlawful Detainer trial that the loan upon which the foreclosure is based is NOT the loan upon which Marks has ANY obligation and is NOT related to the Deed of Trust, which was ignored by the Unlawful Detainer Court.  Furthermore, Mr. Eikenberry is well aware that the jury awarded his clients a monetary sum NOT Marks property.   Mr. Eikenberry commits fraud upon the court and abuse of the judicial process by continuing in this manner in violation of law.  TRA Partners, continue to unlawfully surveil Marks home, call Marks home and hang up the telephone, and other acts to make Marks and her family uncomfortable in their own home.

## TRANSFER OF REAL ESTATE CANNOT BE BASED UPON FRAUD

59.     Where there has been a notice defect and no conclusive presumption language in the deed,the sale has been held void. (*Scott v. Security Title Ins. & Guar. Co.* (1937) 9 Cal.2d 606 [72P.2d 143]; *United Bank & Trust Co. v. Brown*, supra, 203 Cal. 359; *Standley v. Knapp* (1931)113 Cal.App. 91 [298 P. 109]; Seccombe v. Roe, supra, 22 Cal.App. 139.)   Where there has been a notice defect and conclusive presumption language in the deed, courts have characterized the sales as "voidable." (*Lancaster Security Inv. Corp. v. Kessler* (1958) 159 Cal.App.2d 649 [324 P.2d 634]; *Pierson v. Fischer*, supra, 131 Cal.App.2d 208; *Mack v. Golino*, supra, 95 Cal.App.2d 731; *Leonard v. Bank of America etc*. Assn., supra, 16Cal.App.2d 341.) The trustor wishing to set aside a "voidable" sale must prove to the trial court that the conclusive presumption language does not apply to the sale either because there are grounds for equitable relief, such as fraud related to the provision, or because the conclusive presumption does not apply to the buyer, often on the basis that the buyer is not a bona fide purchaser for value. The trustor may then attempt to prove defective notice. (*Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 639-640 [209 Cal.Rptr. 801]; *Lancaster Security Inv. Corp. v. Kessler*, 159 Cal.App.2d 649, 655.)  In the case at hand, the deed of trust was not lawfully assigned to any entity.  The parties

-23-

who unlawfully sold the property to the Plaintiffs were not the lawful beneficiaries to the property and had no lawful right to sell to any party. Litigation continues in these matters. As such, Plaintiff's unlawful purchase is clearly VOID.

## CONCLUSION

60.     Marks contends that TRA lackss standing to seek relief from stay as the recorded lis pendens provided constructive and actual notice that issues of title existed since 2007. Marks currently has an equitable title interest for the automatic stay to protect. This Honorable Court should deny the Motion for relief as requested by TRA. The Trustee's Deed upon sale should be deed VOID not voidable.

61.     Marks 2007 lis pendens remains recorded and has not been expunged prior to the unlawful trustee's sale. The Notice of Default is based upon and clearly references on its face - a note upon which Marks has NO obligation. That same loan is NOT related to Marks Deed of Trust. There are pending appeals that must be completed prior to completion of any State Court actions. Marks allegations of fraud must be addressed. Justice demands same. Marks continues to suffer manifest injustice in these matters.

62.     Marks has recently discovered in March of 2011 a Motion for Relief from Stay which was GRANTED against New Century aka Home 123 in Delaware in 2008. Marks further requests that this Court allow the related proceedings in the Ninth Circuit and the Delaware Bankruptcy Court to continue concurrently with this matter. The outcomes to those matters will have a direct relation to the matters at bar. That the State Court Unlawful Detainer proceeding be Stayed until the Marks allegations of fraud are litigated on their merits as transfer of Real Estate cannot be based upon fraudulent documents and fraud. As Marks was not allowed to bring the underlying allegations of fraud in the state court, any judgment of the Unlawful Detainer court that violates the decision of the jury would be in clear violation of the Automatic Stay.

-24-

63. The Jury did NOT award Defendants Marks home only damages to which they are not entitled to receive. TRA can and should receive reverse the Trustee's sale and restore Marks to her position prior to the unlawful trustee sale. Justice demands same.

64. As Marks properly advised TRA, Askew and Eikenberry at the onset, TRA should seek relief from the entity that sold it a property with a cloud on title. As a real estate professional, and an 'investor' in over 60 properties in Alameda County, Askew should have performed reasonable diligence prior to making the purchase. Askew admitted failure of his "title company" to advise him of the currently recorded 2007 lis pendens demands that Askew seek relief with that entity not Marks.

65. A governing principle was articulated more than sixty years ago by Judge Learned Hand, perhaps the most distinguished U.S. jurist who never sat on the U.S. Supreme Court. Judge Hand stated: "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert." United States v. Marzano, 149 F.2d 923, 925 (2d Cir.1945). Plaintiff here seeks nothing more than justice. Justice for which she has been fighting since 2006.

66. Marks seeks monetary relief for all costs incurred relating to the fraudulent foreclosure sale, the unlawful detainer trial and any and all further relief this Honorable Court deem fair just and proper.

April 28, 2011

_Leslie Marks_
LESLIE MARKS